UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID ANTHONY GUERRA,

               Petitioner,

vs.

WARDEN ANDREW JACKSON,

               Respondent.

_____/

Case No. 07-10190

Nancy G. Edmunds
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

**REPORT AND RECOMMENDATION**
**ON PETITION FOR RELIEF UNDER 28 U.S.C. § 2254**

## I.      PROCEDURAL HISTORY

Petitioner David Anthony Guerra filed the present action, through counsel,

on January 11, 2007, pursuant to 28 U.S.C. § 2254.  (Dkt. 1).  An answer to the

petition was filed on July 24, 2007.  (Dkt. 7).  The case was initially referred to

Magistrate Judge Whalen for preliminary motions and other duties as designated in

28 U.S.C. § 636(b)(1)(B).  This matter was reassigned to the undersigned on

January 5, 2009.  (Dkt.  11).  After consideration, it is **RECOMMENDED** that the

petition for writ of habeas corpus be **DENIED** for the reasons stated below.

## II.     FACTUAL BACKGROUND

A relatively concise summary of the facts of this case was included in the

opinion of the Michigan Court of Appeals:

A Crime Area Target Team of the Flint Police Department, which had been investigating gang activity for several years, discovered that the Spanish Cobras, a gang originating in Chicago, had been active in Flint since the early 1990s. The Spanish Cobras were primarily drug traffickers, but also committed larcenies, burglaries, thefts, extortion, fencing of stolen property, and assaults.

As part of an investigation of the Spanish Cobras, Michigan State Trooper Dale Girke made several undercover drug transactions to discover the drug source. Some of the transactions were surveilled by Flint police officers, who ultimately searched Jose Diaz's home finding a safe containing $3,600. Marked bills from the drug transactions with Trooper Girke were also traded to Diaz. In March 1998, Flint police executed a search warrant at Diaz's home where they found firearms and various items exhibiting gang colors and symbols, as well as photographs of gang members, including defendants, wearing gang paraphernalia and making gang signs.

In June 1998, Flint police officers executed felony arrest warrants regarding eleven individuals, including defendant Guerra. During the execution of defendant Guerra's arrest warrant, Lieutenant Gary Hagler approached defendant Guerra's house and saw him run from the front door. Defendant Guerra did not run straight for the back door, but ran through other rooms of the house. He was arrested on the back patio. During what the prosecutor argues was a protective sweep of the house, officers observed marijuana. On the basis of this observation and other information, the police obtained a search warrant. Pursuant to the search warrant, police seized two bags containing over ten grams of cocaine, a nine-millimeter, semiautomatic pistol, a quilt with gang symbols and colors, other gang-related material and photographs, and drug paraphernalia.

Defendants, as well as three other individuals, were charged with racketeering, MCL 750.159i(1), in connection with their

alleged membership and participation in the illegal activities of the Spanish Cobras.

*People v. Gonzales and Guerra*, 256 Mich.App. 212, 216-17 (2003).

## III.   STATE PROCEDURAL HISTORY

On June 4, 1999, petitioner was charged in a felony information with: (1) knowingly conducting or participating in the affairs of an enterprise, specifically a street gang known as the Spanish Cobras, through a pattern of racketeering activity, in violation of Mich. Comp. Laws § 750.159i(1); (2) possession with intent to deliver less than 50 grams of cocaine, in violation of Mich. Comp. Laws § 333.7401(2)(a)(iv); (3) maintaining a drug house, in violation of Mich. Comp. Laws § 333.7405(1)(d); and (4) carrying a firearm during the commission of a felony, in violation of Mich. Comp. Laws § 750.227b. After a trial on these charges ended on September 29, 1999, with petitioner being found guilty of all of the charges, petitioner was sentenced to "thirteen years and four months to twenty years in prison for the racketeering conviction, eight to twenty years in prison for the conviction of possession with intent to deliver cocaine, one year and four months to two years in prison for the conviction of maintaining a drug house, and two years for the felony-firearm conviction." *People v. Guerra*, 256 Mich.App. 212 (2003).

Petitioner filed a direct appeal with the Michigan Court of Appeals.  On appeal, he argued that:  (1) the trial court had erred regarding evidentiary issues in several respects including admitting evidence of the criminal activities of others, admitting evidence of an assault allegedly ordered by petitioner, admitting evidence of gang affiliation, denying the admission of evidence of a plea agreement that a defense witness had entered into and admitting evidence of similar acts; (2) the trial court had erred in denying his motion to suppress the evidence seized during the search of his residence; (3) the trial court lacked jurisdiction over a predicate offense committed by petitioner as a juvenile; and (4) the trial court refused to consider the sentencing guidelines.  (Dkt. 7, pp. 2-3).

The Court of Appeals affirmed the conviction by opinion dated April 8, 2003.  *People v. Guerra*, 256 Mich.App. 212 (2003).  The state appellate court found that evidence of the criminal conduct of others was properly admitted because it was relevant to the racketeering charge in that it tended to show the existence of an organization or enterprise, that members of the organization were involved in criminal activity, and that petitioner was also a member of that organization.  The court also concluded that evidence of an assault allegedly ordered by petitioner was properly admitted because it tended to show petitioner's leadership role in the illegal organization.  With respect to the issue regarding the admission of evidence of gang affiliation, the court found that the issue was an

Report and Recommendation
28 U.S.C. § 2254 Petition
*Guerra v. Jackson*; 07-10190

"unpreserved claim of prosecutorial misconduct" for which plain error would have to be demonstrated in order to raise it on appeal. The court found that there was no plain error because the witness had been determined to be an expert on street-gangs and the testimony did not affect petitioner's substantial rights. Regarding the trial court's denial of petitioner's attempt to impeach a witness that petitioner had called to testify, the appellate court said there was no error because petitioner had waived appellate review on the issue. Specifically, petitioner had "contributed" to the problem by seeking to impeach the witness on the basis of testimony that petitioner had elicited from the witness and, in any event, there was no error on the part of the trial court where petitioner had brought out evidence of a threat by petitioner and then sought to impeach the witness with evidence of a plea agreement with the government. The appellate court further considered the trial court's ruling on similar act evidence and concluded that there had been no objection to the admission of the evidence so the evidence was properly admitted. However, on appeal, petitioner challenged the trial court's instruction to the jury that it could consider evidence of other drug sales by petitioner in determining if he had the required intent to deliver the drugs found in his residence, so it was the instruction by the court, rather than the admission of the evidence, on which petitioner claimed error. In that petitioner had not objected to the instruction in question, the court found that plain error affecting petitioner's substantial rights must be

Report and Recommendation
28 U.S.C. § 2254 Petition
*Guerra v. Jackson*; 07-10190

demonstrated. The court said there was no error in so instructing the jury because proving an intent to deliver was required of the government and proving intent could be accomplished through evidence of other drug sales, among other things.

As to the motion to suppress, the appellate court determined that the conduct of the officers by entering defendant's residence to arrest him was reasonable. The officers believed petitioner to be a member of a gang that was involved in drug trafficking and firearm possession. The officers were making coordinated arrests of 11 gang members on that day and some were charged with violent offenses. Also, some of the gang members had made threats against police officers and one of those individuals was petitioner's cousin.

Petitioner sought to have his conviction reviewed by the Michigan Supreme Court, but was denied leave to appeal on November 21, 2003. *People v. Guerra*, Michigan Supreme Court No. 123935. Petitioner filed a post-conviction motion for relief from judgment which was denied by the trial court on July 16, 2004. *People v. Guerra*, Docket. No. 99-4416 FH. Petitioner filed an application for leave to appeal to the Michigan Court of Appeals rasing issues including: (1) the claim he was denied due process where the evidence was not sufficient to convict him on the drug possession charge; (2) the claim he was denied due process by prosecutorial misconduct; (3) the claim that he was denied due process by the

Report and Recommendation
28 U.S.C. § 2254 Petition
*Guerra v. Jackson*; 07-10190

admission of expert testimony; (4) the claim that petitioner was denied due process

by the constitutional ineffectiveness of trial and appellate counsel; and (5) the

claim that he was denied due process based on the cumulative effect of errors

during the trial.  The Court of Appeals denied leave to appeal for failing to meet

the requirements of Michigan Court Rule 6.508 on August 16, 2005.[1]  *People v.*

*Guerra*, Michigan Court of Appeals No. 260588.  On February 27, 2006, the

Michigan Supreme Court denied leave to appeal for the same reason given by the

Court of Appeals.  *People v. Guerra*, Supreme Court No. 129609.

## IV.   FEDERAL REVIEW

Petitioner filed the present petition under 28 U.S.C. § 2254, which is part of

the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), on January

11, 2007.  (Dkt. 1).  Petitioner raises several issues in the petition including:  (1)

whether the trial court erred in denying his motion to suppress the evidence seized

in the search of his residence; (2) whether the trial court erred in admitting

evidence of an assault allegedly facilitated by petitioner; (3) whether the trial court

erred in admitting evidence of gang affiliation; (4) whether the trial court erred in

---

[1] Under Michigan Court Rule 6.502, a defendant may file a motion for relief
from judgment, under certain circumstances, when a direct appeal is not available.
Michigan Court Rule 5.508(D) provides that relief will not be granted for several
reasons, including the failure to raise an issue on direct appeal unless good cause
and actual prejudice is shown.  This would appear to be the state equivalent to
federal habeas relief pursuant to 28 U.S.C. § 2254.

admitting evidence of the acts of people not on trial; (5) whether the trial court erred in denying him the opportunity to impeach his own witness; (6) whether the trial court erred in allowing the jury to consider similar act evidence; (7) whether petitioner was denied constitutionally effective counsel when his attorney failed to object to the comments of the prosecutor regarding petitioner's prior imprisonment; (8) whether petitioner was denied constitutionally effective appellate counsel; (9) whether petitioner's due process rights were violated where he was convicted on insufficient evidence; (10) whether petitioner's due process rights were violated by prosecutorial misconduct; (11) whether petitioner's due process rights were violated by the admission of expert testimony regarding gang activity without a proper foundation; and (12) whether petitioner was denied constitutionally effective trial and appellate counsel.

A.      Standard of Review

Under the AEDPA, federal courts have limited authority to grant relief to a state prisoner. Where a state court has adjudicated the petitioner's claim on the merits, a federal court can only grant a writ of habeas corpus where the state's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a

rule different from the governing law set forth in [Supreme Court] cases, or if it

decides a case differently than [the Supreme Court has] done on a set of materially

indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "The [federal]

court may grant relief under the 'unreasonable application' clause if the state court

correctly identifies the governing legal principle from [Supreme Court] decisions

but unreasonably applies it to the facts of the particular case." *Id.* "An

*unreasonable* application of federal law is different from an *incorrect* application

of federal law." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). The federal writ

should not issue just because the "state-court decision applied clearly established

federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 411

(2000). Rather, "the state court's application of clearly established federal law

[must have been] objectively unreasonable." *Cone*, 535 U.S. at 694.

A special category of claim is considered differently than other claims. A

habeas petitioner may not seek relief on a Fourth Amendment claim where he had

a full and fair opportunity to raise the claim in state court and presentation of the

claim was not thwarted by a failure of the state's corrective processes. *Stone v

Powell*, 428 U.S. 465, 494-95 (1976); *Machacek v Hofbauer*, 213 F.3d 947, 952

(6th Cir. 2000).

Additionally, federal habeas review is barred where the state court finds that

the petitioner defaulted the claim pursuant to an independent and adequate state

procedural rule unless the prisoner can demonstrate cause for the default of the alleged violation of federal law and actual prejudice, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

B.      Protective Sweep

Petitioner's first claim of error relates to the state court ruling with respect to a challenge to the conduct of the officers in conducting a protective sweep at his residence on June 24, 1998, which preceded the execution of a search warrant at the residence and the seizure of drugs and a gun.  Petitioner filed a motion to suppress in state court and that motion was heard on November 24, 1998.

Testifying for the prosecution was Lt. Gary Hagler of the Flint Police Department.  (11/24/98 Hrg. Tr., p. 4).  Hagler and other officers were attempting to arrest several individuals that day, who were members of a street gang in Flint known as the Spanish Cobras.  The Spanish Cobras had been involved in assaults, drug sales, firearm possession, and had made threats against police officers including Hagler.  Also, the gang members were known to protect each other with firearms.  (Hrg. Tr., pp. 5-12).  When Hagler approached the house, he observed petitioner at the front door and then he saw petitioner run towards the back of the house.  Hagler directed petitioner to stop, but petitioner ran between several rooms of the house and then attempted to run out the back door where he was confronted

Report and Recommendation
28 U.S.C. § 2254 Petition
*Guerra v. Jackson*; 07-10190

by another police officer and arrested. (Hrg. Tr., pp. 15-18). Based on petitioners involvement with the Spanish Cobras, the prior activities of the Spanish Cobras, and petitioner's conduct inside the house when Hagler approached, Hagler was concerned that others might be present in the house and ordered other officers to conduct a protective sweep of the house. (Hrg. Tr., pp. 18-22). During the protective sweep, the officers observed marijuana in two locations and subsequently obtained a search warrant for the residence. (Hrg. Tr., pp. 23-25). During the warrant-based search of the residence, the officers located cocaine and three firearms. (Hrg. Tr., p. 26). The trial judge, applying *Maryland v. Buie*, 494 U.S. 325 (1990), concluded the officers had sufficient justification to be concerned about the presence of others in the residence and, therefore, the protective sweep of the residence was not improper. (Hrg. Tr., pp. 89-91). Petitioner raised this issue in his direct appeal and the Michigan Court of Appeals determined "the trial court did not err in determining that the police conduct was reasonable [in that] Hagler articulated facts that would form 'a reasonable belief' that there may be individuals in defendant Guerra's home who posed a danger to the arresting officers [because the] officers knew that other individuals affiliated with the Spanish Cobras, including some wanted for assaultive crimes and murder, were still at large and could be hiding in defendant Guerra's home." 256 Mich.App. 212.

Report and Recommendation
28 U.S.C. § 2254 Petition
*Guerra v. Jackson*; 07-10190

Following *Stone v. Powell, supra*, the Sixth Circuit has ruled that a "habeas petitioner may not [pursue a Fourth Amendment claim] if he had a full and fair opportunity to raise the claim in state court and presentation of the claim was not thwarted by any failure of the state's corrective processes." *Machacek*, 213 F.3d at 952. In the present case, petitioner challenged the search of his residence in the state trial court and did not get a favorable ruling. He also challenged the search in the Michigan Court of Appeals and the decision of the trial court was affirmed. Thus, petitioner had a full and fair opportunity to raise the claim in the state court and there was no failure of the state court's procedural mechanism. Under these circumstances this court need not consider the merits of petitioner's claim. See *Kerr v. Smith*, 2009 WL 88054 (N.D. Ohio 2009).

Petitioner makes the related claim that the search warrant was improperly issued because it was based on observations the officers made during the protective sweep which, petitioner argues, was not properly conducted. In that the only argument petitioner makes regarding the search warrant is that it was based on improperly obtained evidence, and it has been determined that the evidence was obtained properly, petitioner's argument lacks merit and the petition should be denied as to that claim.

C.     Evidentiary Claims

Petitioner raises challenges to several evidentiary rulings by the trial judge.

The evidentiary rulings challenged by petitioner include:  (1) the admission of

evidence of an assault that was allegedly facilitated by petitioner; (2) the admission

of evidence of gang affiliation; (3) the admission of evidence of the acts of other

people who were not on trial; (4) the denial of the admission of evidence relating to

the impeachment of one of petitioner's witnesses; (5) the admission of similar act

evidence; and (6) the admission of expert testimony regarding street gang-related

topics.

On habeas review, a federal court does not pass on errors of state law,

especially rulings regarding the admissibility or exclusion of evidence.  An

evidentiary ruling by a state judge does not create a cognizable habeas issue unless

it is "so fundamentally unfair as to violate the petitioner's due process rights."

*Coleman v. Mitchell*, 244 F.3d 533, 542-43 (6th Cir. 2001).  For an evidentiary

issue to violate fundamental fairness, it must "violate those fundamental

conceptions of justice which lie at the base of our civil and political institutions

and which define the community's sense of fair play and decency.  *Burton v.*

*Renico*, 391 F.3d 764, 774 (6th Cir. 2004).  The category of infractions that violate

fundamental fairness is "very narrow."  *Dowling v. United States*, 493 U.S. 342,

352-53 (1990).  Evidence that is circumstantially valuable in proving the

government's case does not violate fundamental fairness.  *Id*.  Thus, even if the

state court made an error in an evidentiary ruling, it must be such an egregious

error that violated fundamental fairness in order for petitioner to be entitled to

habeas relief.

      1.    Evidence of an Assault

      The trial court admitted evidence that petitioner had instructed another

person, Shariff Mallett, to stab Ryan Pinkston.  The evidence was in the form of

the testimony of the stabbing victim, Pinkston, who testified that petitioner told

him he had instructed Mallett to stab Pinkston.  (Dkt. 9-43, pp. 30-31).  Pinkston

had identified Mallett as a "Cobra."  *Id*.  The Michigan Court of Appeals ruled that

the admission of the evidence was proper because the "evidence tended to

demonstrate defendant's leadership role among the Spanish Cobras.  The evidence

was material in that defendant's participation in the affairs of the Spanish Cobras

was at issue during the trial.  It was also probative, making his leadership in the

Spanish Cobras more probable."  256 Mich.App. at 222.  Petitioner had been

charged with participating in an enterprise through a pattern of racketeering in

violation of state law.  Mich. Comp. Laws § 750.159i(1).  It is clear, as determined

by the Michigan Court of Appeals, that this evidence was probative of petitioner's

leadership role in the Spanish Cobras, which was the "enterprise" that was the

subject of the criminal prosecution. Under the circumstances, it cannot be said that the admission of this evidence violates fundamental fairness.

### 2. Evidence of Gang Affiliation

Lt. Hagler testified, over petitioner's objection, that the Spanish Cobras were a gang that operated in Flint and that petitioner and other individuals were members of the gang. Hagler had been qualified as an expert witness in street gangs and was allowed to testify about many of these issues in his capacity as an expert. Petitioner had challenged the admission of the evidence in the direct appeal and the Michigan Court of Appeals viewed petitioner's objection to the evidence as a claim of prosecutorial misconduct that had not been properly preserved. The Michigan appellate court found that there was no plain error in the admission of this evidence in that it was within Hagler's status as an expert witness. Further, the Michigan Court of Appeals found that admitting the evidence did not affect petitioner's substantial rights because it "occurred during only a small portion of the direct-examination of one witness and did not infect the entire trial." 256 Mich.App. at 222-23.

In the present petition, petitioner argues that his gang affiliation was not relevant and, therefore, it was prejudicial to admit gang affiliation evidence in this case. Petitioner contends that the gang affiliation evidence merely shows criminal propensity and, therefore, it is objectionable. However, this argument does not

Report and Recommendation
28 U.S.C. § 2254 Petition
*Guerra v. Jackson*; 07-10190

establish that the ruling of the state court was in violation of the law as it was "clearly established" by the U.S. Supreme Court. The Supreme Court has not clearly established that the admission of propensity evidence is a violation of due process. *Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003). Additionally, the evidence of gang affiliation is relevant to petitioner's involvement in the Spanish Cobras, which was a significant issue regarding the state racketeering charge and, therefore, not merely propensity evidence. The admission of this evidence did not violate fundamental fairness.

In a related issue, petitioner claims a due process violation based on the trial court's admission of expert testimony from Lt. Hagler. (Dkt. 1-2, pp. 22-27). Petitioner had not raised this issue in his direct appeal, but did raise it in his post-conviction for relief from judgment. Petitioner was denied consideration of this issue by the trial court because it had not been raised on direct appeal and cause and prejudice for that failure had not been shown. The Michigan Court of Appeals and the Michigan Supreme Court both denied consideration of these issues for failure to meet the requirements of Michigan Court Rule 6.508(D).

Respondent contends that this issue has been procedurally defaulted, making the claim not cognizable on habeas review, without a showing of cause for the default and actual prejudice. Petitioner's showing of cause is a claim of ineffective assistance of counsel and his claim of actual prejudice is a bald assertion that "the

Report and Recommendation
28 U.S.C. § 2254 Petition
*Guerra v. Jackson*; 07-10190

outcome of the trial would have been different" had Lt. Hagler not been qualified

as an expert witness. (Dkt. 1-2, pp. 26-27). Petitioner's argument does not

demonstrate how the outcome of the case would have been different if Lt. Hagler

had not been qualified as an expert witness and such a consequence is not

reasonably apparent from the record. Even if petitioner's claim of ineffective

assistance of counsel establishes cause for not raising the issue on direct appeal,

petitioner has not shown actual prejudice. Lt. Hagler's testimony as an expert was

based on 16 years as a police officer in Flint, attendance at seminars, prior

investigations involving gangs, and training at universities. (Trial Transcript Vol.

II, pp. 466-68). While petitioner quibbles about the significance of these

qualifications, it is clear that Lt. Hagler had some qualifications that would

establish a level of expertise sufficiently beyond that of an average person to allow

the trial judge to determine that he had specialized knowledge based on his training

and experience that would assist the jury.[2] Petitioner has not pointed to any

particular aspect of Lt. Hagler's expert testimony that would be significantly

damaging to his case such that he has demonstrated prejudice from its admission in

order to overcome the procedural default.

---

[2] Michigan Rule of Evidence 702 requires a showing of "specialized knowledge [that] will assist the trier of fact to understand the evidence" in order to allow testimony in the form of an opinion.

Report and Recommendation
28 U.S.C. § 2254 Petition
*Guerra v. Jackson*; 07-10190

Notwithstanding the procedural default, the admission of Lt. Hagler's testimony as an expert did not result in fundamental unfairness. Whether the trial judge erred in admitting the testimony, as claimed by petitioner, the error was merely an error of state law and did not have constitutional significance. Nothing that Lt. Hagler testified about as an expert warrants the claim that the outcome of the trial would have been different.

3. Evidence of Acts of People Not on Trial

Petitioner also claims a due process violation based on the admission of evidence relating to acts of individuals who were not on trial. The "acts" of these other individuals involved sales of cocaine and possession of firearms. Petitioner agues that this evidence was not relevant and prejudicial. The Michigan Court of Appeals affirmed the decision of the trial judge to admit the evidence noting that the evidence was relevant to the racketeering charge against petitioner. The evidence showed the conduct of others associated with the Spanish Cobras and "tended to show that defendants were part of the enterprise known as the Spanish Cobras and defendants' membership therein." Evidence related to Jose Diaz was also deemed relevant by the state appellate court in that drug activity linked to Diaz tended to show the pattern of criminal activity related to the Spanish Cobras and evidence of Diaz's possession of firearms was relevant because petitioner was seen possessing firearms and he was charged with a firearm offense. 256 Mich.App.

Report and Recommendation
28 U.S.C. § 2254 Petition
*Guerra v. Jackson*; 07-10190

212. Petitioner has not demonstrated that the admission of this evidence violated fundamental fairness.

### 4. Evidence of Defense Witness's Plea Agreement

Petitioner was denied the opportunity to admit evidence of a plea agreement that was entered into by a witness that he called to testify. Petitioner called Mary Parrish as a witness and, among other things, elicited information from her about threats made to her by petitioner. The prosecution pursued the matter further on cross-examination and then petitioner sought to then offer into evidence the fact that Parrish had entered into a plea agreement with the prosecution, which called for her truthful testimony in exchange for a more lenient sentence. The trial court denied the request and that decision was affirmed by the Michigan Court of Appeals finding that petitioner had brought out the information about the threat and, therefore, was not entitled to impeach the witness through the use of the plea agreement. 256 Mich.App. 212. Petitioner claims that the state court's decision to prevent him from impeaching Parrish violated his rights to confrontation and to due process. Petitioner cites *Chambers v. Mississippi*, 410 U.S. 284 (1973) in support of his confrontation argument.

Respondent claims that petitioner's right to cross-examine a witness is not unlimited and that if there was an error in preventing petitioner from asking Parrish

Report and Recommendation
28 U.S.C. § 2254 Petition
*Guerra v. Jackson*; 07-10190

about her plea agreement it was a harmless error in light of how little Parrish's testimony related to the substantive evidence of petitioner's guilt.

*Chambers* does stand for the proposition that to deny a criminal defendant the right to cross-examine his own *witness* is a violation of due process. In *Chambers*, the defendant in a murder case was prevented from impeaching a witness that he had called with respect to prior confessions the witness had made to the murder that the defendant was charged with. The denial was based on a state rule in effect at the time which prevented a party from impeaching its own witness. While the Supreme Court said it was a violation of due process to limit the defendant in that way the court also said that the violation, by itself, did not warrant a reversal of the conviction. *Id.* at 297-99. The court did go on to say that this violation and other violations, when viewed in the aggregate, did warrant reversal of the conviction.

Even if it is assumed that the trial judge erred in denying petitioner the opportunity to cross-examine Parrish in this manner, the error would not warrant reversal of the conviction. As respondent points out, she had little to say that directly implicated petitioner with respect to the charges he faced and therefore any error would be harmless. Petitioner has not identified any testimony of significance that Parrish gave, as a defense witness, that would have contributed to his guilt in any important way. A habeas petitioner must establish that any error

Report and Recommendation
28 U.S.C. § 2254 Petition
*Guerra v. Jackson*; 07-10190

had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Jordan v. Hurley*, 397 F.3d 360, 363-64 (6th Cir. 2005).

     5.     Prior Bad Acts Evidence

During the trial, certain evidence was admitted relating to drug transactions with which defendant was alleged to have been involved. During deliberations, a question was submitted by the jury as to whether they could consider certain evidence in deciding whether petitioner was guilty of the offense of possession of cocaine with the intent to deliver. The trial court repeated the instruction, previously given when the other instructions were given at the end of trial, that the jury could consider all the evidence presented during the trial with respect to any decision they needed to make. Defense counsel objected to the instruction claiming that the prosecution had not given notice under Michigan Rule of Evidence 404(b) as to its intent to use the evidence of other drug transactions to prove the petitioner's intent to deliver the cocaine that petitioner was alleged to have possessed, but the trial court overruled the objection and repeated the instruction previously given.

In his direct appeal in state court, petitioner raised an objection to the decision of the trial judge, but described the claimed error as an improper instruction rather than an error in admitting the evidence. The Michigan Court of Appeals reviewed the claim of error as tendered by petitioner and found that the

Report and Recommendation
28 U.S.C. § 2254 Petition
*Guerra v. Jackson*; 07-10190

instruction was proper. In so ruling, the court determined that petitioner had not

objected to the instruction before the jury deliberations as required under state law

so the claim could only be reviewed for plain error. The court reviewed the

elements of the offense in question and stated that intent could be inferred from

circumstantial evidence, that sufficient circumstantial evidence existed to show

petitioner's intent to distribute the cocaine and therefore "the alleged instructional

error did not affect [petitioner's] substantial rights." 256 Mich.App. 212.

In this petition, petitioner claims the error was the admission of the evidence

for the purpose of proving his intent with respect to the cocaine he was charged

with possessing, not the form of the instruction. While petitioner acknowledges he

did not object to the admission of the evidence, he contends that the prosecutor

never gave notice of its intent to offer the evidence for this purpose and, therefore,

he should be excused for not objecting to its admission when it was offered.[3]

Petitioner also argues that admission of other acts evidence in the absence of a

proper evidentiary purpose violates due process citing, among other cases,

---

[3] Michigan Rule of Evidence 404(b)(2) generally requires that the prosecution give notice of its intent to use other act evidence but allows the court to excuse that notice under certain circumstances. However, the challenged evidence arguably is not evidence subject to the limitations of Michigan Rule of Evidence 404(b) because it was admitted to prove the pattern of racketeering. See, for example, *United States v. Martinez*, 430 F.3d 317, 335 (6th Cir. 2005) (evidence that is directly probative of charged offense does not implicate other acts evidence rule).

*Schoenberger v. Russell*, 290 F.3d 831 (6th Cir. 2002). However, the

*Schoenberger* case does not help petitioner in this regard. The court stated there

was a "general reluctance to second-guess state court evidentiary rulings in a

habeas proceeding" and "only in extraordinary cases will an error in application of

state rules of evidence rise to the level of a due process violation." *Id*. at 836. The

court there had concluded that some evidence of the petitioner's prior bad acts was

probably improperly admitted, but the error did not prejudice the petitioner in light

of all the other evidence. Similarly, the evidence in the present case is not unfairly

prejudicial in light of all the other evidence in the case. An error must have a

substantial and injurious effect or influence in determining the verdict or it will be

considered harmless error on habeas review. *Dorchy v. Jones*, 398 F.3d 783, 787

(6th Cir. 2005). Petitioner has not demonstrated a substantial and injurious effect

on the jury verdict in the present case.

Respondent argues that whether the issue is an improper jury instruction or

alleged improper propensity evidence, the claim is not cognizable on habeas

review. (Dkt. 7, p. 21). If the issue challenged by petitioner is based on a claim of

improper jury instruction under state law, as characterized by the Michigan Court

of Appeals, then it is not reviewable in a federal habeas proceeding unless it is

fundamentally unfair. *Long v. Smith*, 663 F.2d 18, 23 (6th Cir. 1981). The

instruction given by the trial court is a standard instruction that relates to the jury's

Report and Recommendation
28 U.S.C. § 2254 Petition
*Guerra v. Jackson*; 07-10190

ability to consider evidence.  This instruction does not fall within that very narrow range of issues that could be viewed as fundamentally unfair.

      6.     Cumulative Effect

Petitioner claims that even if these evidentiary issues do not individually constitute a fundamental unfairness, the cumulative effect does rise to that level. (Dkt. 1-2, p. 7).  Petitioner does not demonstrate that this issue was presented to the state court at any level and, therefore, petitioner has not exhausted his state remedies regarding that claim.  28 U.S.C. § 2254(c); *Onifer v. Tyszkiewicz*, 255 F.3d 313, 315 (6th Cir. 2001).  Even if the claim had been raised in a prior state court proceeding, the Supreme Court has not determined that constitutional claims that would not individually support habeas relief may be aggregated to warrant habeas relief.  *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002).

      D.     <u>Sufficiency of the Evidence</u>

Petitioner was convicted of two offenses that related to items found in his residence during the search conducted there in June of 1998.  The offenses were possession of less then 50 grams of cocaine with intent to deliver, in violation of Mich. Comp. Laws § 333.7401(2)(a)(iv), and possession of a firearm during the commission of a felony, in violation of Mich. Comp. Laws § 750.227b.  While each of these offenses have several elements, it is the element of possession that petitioner claims was deficient.  (Dkt. 1-2, pp. 16-22).  Petitioner did not raise this

Report and Recommendation
28 U.S.C. § 2254 Petition
*Guerra v. Jackson*; 07-10190

claim in his direct appeal. He did raise it in the motion for relief from judgment, which was filed after the direct appeal was completed. In denying his request for relief, the trial judge determined that the claims were "procedurally barred because he either failed to raise them in an appeal of right, and because he has shown neither good cause for their omission or actual innocence." (Dkt. 1-3, p. 9). This is another claim where petitioner has defaulted the claim pursuant to an independent and adequate state procedural rule. Such a claim will not be a basis for habeas relief unless petitioner can demonstrate cause for the default of the alleged violation of federal law and actual prejudice, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. As to cause, petitioner makes the ineffective assistance of appellate counsel claim as his "cause" for not raising the issue in his direct appeal. However, the claim is made generically and does not address any specific argument with respect to a sufficiency of the evidence claim. (Dkt. 1-2, pp. 34-37). This generalized claim of ineffective assistance of counsel does not demonstrate "cause" for the failure to properly raise the issue in state court and, therefore, petitioner has procedurally defaulted this claim.

Notwithstanding the procedural default, petitioner's claim regarding the sufficiency of the evidence does not establish a fundamental unfairness regarding his convictions for these two offenses. Petitioner argues that the deficiency in the

Report and Recommendation
28 U.S.C. § 2254 Petition
*Guerra v. Jackson*; 07-10190

proofs relates to the evidence of his possession of the cocaine and the firearm. Under the AEDPA, a federal court must determine if the state court ruling on the merits of petitioner's claim, resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding. *Mueller v. Bell*, 2008 WL 482278 (6th Cir. 2008).

United States Supreme Court precedent establishes that, to satisfy the due process required to support a criminal conviction, evidence must be presented that could convince a rational trier of fact beyond a reasonable doubt of the existence of every element of the offense. *Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979). In order to determine whether this constitutional standard has been achieved, a reviewing court must consider the evidence in the light most favorable to the prosecution and decide whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Id.* at 319.

Respondent has pointed out that this Court should not weigh the evidence in assessing its sufficiency, and has cited evidence in the record from which a rational trier of fact could arguably have properly inferred, beyond a reasonable doubt, that petitioner possessed the cocaine and the firearms found in his residence. Those facts include: (1) the contraband was found in petitioner's residence; (2) petitioner

Report and Recommendation
28 U.S.C. § 2254 Petition
*Guerra v. Jackson*; 07-10190

ran from the residence when the police officers approached; (3) witnesses testified that petitioner traveled to Chicago to obtain cocaine and sold it on multiple occasions (Trial Tr. Vol III, pp. 682, 687, 689-92; Trial Tr. Vol VI, pp. 1595-1597); (4) that the cocaine found in petitioner's home had been brought there for him by his co-defendant Israel Gonzalez shortly before the house was searched (Trial Tr. Vol. III, pp. 726-27); and (5) that petitioner kept firearms at his residence on a regular basis. (Trial Tr. Vol. III, pp. 703-05, 740, 757).

A review of the entire trial record reveals evidence that is inconsistent with petitioner's arguments in the instant petition. While there may be some inconsistencies among the witnesses as to certain facts and there may be some facts that could give rise to more than one possible inference, the record as a whole indicates that petitioner possessed the cocaine and firearms found in his residence. "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson v. Virginia*, 443 U.S. at 326. A rational trier of fact could very well have concluded, beyond a reasonable doubt, that the petitioner possessed the cocaine and firearms in his residence. As a result, petitioner has not demonstrated that any rights he had under the constitution were violated within the parameters of the AEDPA.

Report and Recommendation
28 U.S.C. § 2254 Petition
*Guerra v. Jackson*; 07-10190

E.    Prosecutorial Misconduct

Petitioner claims that his constitutional rights were violated by the misconduct of the state prosecutor who "elicited" testimony regarding petitioner's prior incarceration and who made "denigrating" comments during his closing arguments.  (Dkt. 1-2, pp. 10-16).  With respect to the prosecutor "eliciting" statements regarding petitioners prior incarceration, petitioner points to two portions of the trial transcript.  Both of these transcript references relate to the testimony of Theresa Goodman.  In the first of these two transcript references, the prosecutor was asking Ms. Goodman, on direct examination, about when she joined the Spanish Cobras in relation to when petitioner joined the Cobras.  Her response was "[h]e was just a kid then, then he got locked up and came back." (Trial Tr. Vol. III, p. 672).  The second reference is to a part of the re-direct testimony of Ms. Goodman where the prosecutor asks about her awareness of petitioner going "to a juvenile center."  (Trial Tr. Vol. IV, p. 886).  Petitioner also points to a portion of the closing argument of the prosecutor in which the prosecutor states that there "was some evidence that David Guerra was out of the picture for awhile and went off to Glenn Oaks and he came back."  (Trial Tr. Vol. IX, p. 2147).  Regarding the reference to petitioner's prior custody, respondent argues that the statements of the witness were "unresponsive."  (Dkt. 7, p. 29).

The totality of the record relating to evidence of petitioner's prior incarceration is materially different than as represented by petitioner here. As petitioner did point out, Theresa Goodman did say, in response to questions about when petitioner joined the Spanish Cobras, that petitioner was a "kid" and then got "locked up." (Trial Tr. Vol. III, p. 672). There is nothing in the record to suggest that the prosecutor sought to cause Goodman to say petitioner had been "locked up." Additionally, there was no objection by the defense and no additional questions by the prosecutor regarding petitioner's custody situation. Later in the direct examination of Goodman, the prosecutor asked her when petitioner was told that he was the "chief" of all the Cobras in Flint. Goodman responded that petitioner was told that information "after David got out from being locked up, he had been locked up for a few years." (Trial Tr. Vol. III, p. 687). Again, the questioning of Goodman on that point did not appear to suggest the prosecutor intended to have Goodman comment on petitioner's incarceration. As before, there was no objection and no follow-up by the prosecutor regarding petitioner's incarceration.

During the cross-examination of Goodman by petitioner's attorney, Goodman was asked about petitioner's incarceration and she testified that he had been "locked up" at age 15 and incarcerated at a training school in Glenn Mills, Pennsylvania. Goodman further testified that petitioner was there because he had

taken the "blame" for something done by someone else. (Trial Tr. Vol. IV, p. 857).

No information was provided as to the nature of the conduct that petitioner had

taken the blame for. On re-direct examination, the prosecutor asked Goodman

about the person petitioner took the blame for and she said he was a higher ranking

member of the Spanish Cobras. (Trial Tr. Vol. IV, p. 886). The last testimony on

that subject was on re-cross by petitioner's counsel who again asked Goodman

about petitioner being at "Glenn Mills." (Trial Tr. Vol. IV, p. 899). The

prosecutor did mention petitioner's prior incarceration during his closing

argument. The context of the comment was the prosecutor describing a sequence

of events and noted that there was "some evidence that David Guerra was out of

the picture for awhile and went off to Glenn Mills and he came back at some point,

and he is back certainly right back into the Cobras again." (Trial Tr. Vol. IX, p.

2147).

As with a number of the issues raised in this petition, the claim of

prosecutorial misconduct was not raised on direct appeal. It was raised in the post-

conviction motion for relief from judgment but, as with the other issues raised in

that motion, viewed as being procedurally defaulted. Petitioner attempts to relieve

himself of the procedural default by blaming his attorney for being constitutionally

ineffective and claiming prejudice from the conduct. The undersigned believes

that neither the claim of ineffective assistance of counsel nor the claim of prejudice

Report and Recommendation
28 U.S.C. § 2254 Petition
*Guerra v. Jackson*; 07-10190

are meritorious and this claim should be viewed as barred because the state court found that the petitioner defaulted the claim pursuant to an independent and adequate state procedural rule.

Additionally, and notwithstanding the procedural default issue, petitioner has not demonstrated a violation of a constitutional right that warrants any relief in this Court. To serve as a basis for relief on habeas review, the petitioner must demonstrate that the conduct of a prosecutor "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The prosecutor's comments must be more than "simply trial error under state law [and must be fundamentally unfair resulting in a denial of due process] on 'the totality of the circumstances' taking into account 'the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.'" *Kincade v. Sparkman*, 175 F.3d 444, 446 (6th Cir. 1999), quoting, *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982) (*en banc*).

In the present circumstances, there seemed little chance this challenged evidence would mislead the jury. None of the evidence identified the offense for which petitioner served the prior sentence, and it was clearly pointed out that

Report and Recommendation
28 U.S.C. § 2254 Petition
*Guerra v. Jackson*; 07-10190

petitioner had not done anything wrong himself, but was taking the blame for something done by a higher ranking member of the Spanish Cobras.  These references were relatively isolated in the course of a nine day trial and it is clear that the evidence of petitioner's prior incarceration came out accidentally.  Most of the details of the prior incarceration were intentionally brought out by petitioner's trial counsel, not the prosecutor.  Also, there was ample evidence of petitioner's guilt, given the multiple witnesses and the evidence produced from the search of petitioner's residence.  This record establishes that there was no prejudicial error, let alone an error that resulted in a fundamentally unfair trial.

Petitioner also claims prosecutorial misconduct regarding other comments made by the prosecutor during his closing argument.  Petitioner points to statements of the prosecutor where in his rebuttal argument he referred to the arguments of defense counsel and characterized them as "sliming personalities" of witnesses.  The prosecutor went on to remind the jury that it was the jury's job to determine "who was telling the truth and who isn't."  (Trial Tr. Vol. IX, p. 2243).  Petitioner also points to comments of the prosecutor, again on rebuttal, that defense attorneys "will throw rabbits out" suggesting that the arguments of counsel were not on the mark regarding the elements of the offense petitioner had been charged with.  The prosecutor followed that comment with a reminder that the trial judge will give the instructions that the jury is to follow.  The "red herring" comment was

Report and Recommendation
28 U.S.C. § 2254 Petition
*Guerra v. Jackson*; 07-10190

made in this context as well. (Trial Tr. Vol. IX, pp. 2243-45). While not allowed to "make unfounded and inflammatory attacks on the opposing advocate," *United States v. Young*, 470 U.S. 1, 9 (1985), prosecutors are "permitted to comment on the defense's trial strategy." *Slagle v. Bagley*, 457 F.3d 501, 522 (6th Cir. 2006). Additionally, prosecutors are ordinarily entitled to "wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel." *Angel*, 682 F.2d at 607-08. The challenged portion of the prosecutors closing argument is well within the wide latitude prosecutors are given in making their rebuttal arguments and does not make the trial fundamentally unfair.

Petitioner also argues that there was misconduct by the prosecutor regarding his comments on the testimony of certain witnesses. Prosecutors are entitled to "argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005). Clearly a prosecutor may not express a personal view as to the credibility of a witness, but none of the references petitioner has identified here amount to the expression of a personal belief by the prosecutor. *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2004). Petitioner has not identified any misconduct by the prosecutor that resulted in a fundamentally unfair trial.

F.    <u>Ineffective Assistance of Counsel</u>

Petitioner argues that he was denied the constitutionally effective assistance of trial and appellate counsel. (Dkt. 1-2, pp. 27-34). The specific claim relating to trial counsel is the failure to object to the introduction of evidence relating to his prior incarceration and to the prosecutor's comments during closing argument.

In order to establish an ineffective assistance of counsel claim, the petitioner must show that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Judicial review of the lawyer's performance must be "highly deferential" with a "strong presumption" that a lawyer's conduct "falls within the wide range of reasonable professional assistance." *Id*. at 689. In assessing any prejudice claim, the petitioner has the burden to show a "reasonable probability" that the result of the trial would have been different but for counsel's mistakes. *Id*. at 694.

In the present case, while it is clear that defense counsel at trial did not object to the testimony regarding his prior incarceration or the comments of the prosecutor. Petitioner describes the conduct of the prosecutor as obviously improper but, as indicated above, there was no impropriety by the prosecutor let alone an obvious one. The evidence regarding a prior incarceration came into the trial inadvertently and objecting to it at the time the issue first came up may have been sound strategy so as not to highlight the issue for the jury. Defense counsel clearly decided to address the issue of petitioner's incarceration on his cross-

Report and Recommendation
28 U.S.C. § 2254 Petition
*Guerra v. Jackson*; 07-10190

examination of Goodman and perhaps defuse any potential prejudice by pointing out that petitioner had not personally done anything wrong but was taking the blame for someone else's criminal conduct. Regarding the failure to object to the prosecutor's comments in closing argument, those comments were within the wide latitude of argument that prosecutors are allowed to make and there can be no performance deficiency for failing to object to the comments in that context.

Even if it were to be assumed there was a performance deficiency by the failure to object, petitioner has not shown that there is a "reasonable probability" that but for those errors the result of the trial would be any different. The evidence regarding the prior incarceration, muted by the additional evidence that petitioner had done nothing wrong, is unlikely to have changed the result of the trial. Also, in light of the other conduct attributed to petitioner and the other members of the Spanish Cobras, spending time in custody at age 15 for an unspecified offense would not seem likely to have made a difference in the outcome of the trial.

Regarding the claim of ineffective assistance of appellate counsel, petitioner must show a performance deficiency and a prejudice arising from that deficiency. *Bowen v. Foltz*, 763 F.2d 191, 194 (6th Cir. 1985). The prejudice prong of the test in this context requires a showing that, but for counsel's deficient performance, petitioner would have prevailed on appeal. *Mapes v. Tate*, 388 F.3d 187, 194 (6th Cir. 2004). As indicated above, none of the issues that appellate counsel failed to

Report and Recommendation
28 U.S.C. § 2254 Petition
*Guerra v. Jackson*; 07-10190

raise on direct appeal are meritorious and "appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003). Petitioner has not established that either trial counsel or appellate counsel failed to provide constitutionally effective representation.

## V.      RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the Court **DENY** the petition for relief under 28 U.S.C. § 2254.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and

Report and Recommendation
28 U.S.C. § 2254 Petition
*Guerra v. Jackson*; 07-10190

Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 5, 2010

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on March 5, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Jeffrey E. Clothier and Brian O. Neill.

s/Tammy Hallwod
Case Manager
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7850
tammy_hallwood@mied.uscourts.gov